UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| INDUSTRIAL MAINTENANCE ENGINEERING, INC., et al., | ) ) ) | |
| *Plaintiffs*, | ) ) ) | No. 2:20-cv-00659-JMS-DLP |
| *vs.* | ) ) | |
| BRUCE JOHNSON, et al., | ) ) ) | |
| *Defendants*. | ) ) ) ) | |
| BRUCE JOHNSON, | ) ) | |
| *Third-Party Plaintiff*, | ) ) | |
| *vs.* | ) ) | |
| JOHN YOUNG, | ) ) ) | |
| *Third-Party Defendant*. | ) ) | |

**ORDER**

Plaintiffs Industrial Maintenance Engineering, Inc. ("IME") and Indev Gauging Systems, Inc. ("Indev") filed this action seeking recovery against two former employees, Bruce Johnson and Walter Anthony Gregory, as well as the companies that they formed, Microspect Corporation and Microspect Gauging, for alleged misappropriation of IME and Indev's "trade secrets and other proprietary and confidential business information."  [Filing No. 1 at 2.]  In his Answer, Mr. Johnson asserts third-party claims against IME's President, John Young, for breach of contract and conspiracy to defraud.  [Filing No. 58.]  Mr. Young has filed a Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b), seeking dismissal of all of Mr. Johnson's third-party claims.  [Filing No. 69.]  That motion is now ripe for the Court's review.

# I.
## STANDARDS OF REVIEW

1. *Standard under Federal Rule of Civil Procedure 12(b)(1)*

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is to test the sufficiency of the complaint, not to decide the merits of the case. Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject-matter jurisdiction. Jurisdiction is the "power to decide," *Boley v. Colvin*, 761 F.3d 803, 805 (7th Cir. 2014), and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary. In re Chicago, R.I. & P.R. Co., 794 F.2d 1182, 1188 (7th Cir. 1986). Whether or not a plaintiff has standing to bring a lawsuit is a jurisdictional requirement which may be challenged through a motion made pursuant to Rule 12(b)(1). *See Collier v. S.P. Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018).

While a court deciding a Rule 12(b)(1) motion may accept the truth of the allegations in the complaint, it should look beyond the complaint's jurisdictional allegations and view whatever evidence has been submitted on the issue to determine whether subject-matter jurisdiction exists. *Ciarpaglini v. Norwood*, 817 F.3d 541, 543 (7th Cir. 2016). The party asserting the existence of subject-matter jurisdiction bears the burden of demonstrating by competent proof that such jurisdiction in fact exists. *See Thomas v. Gaskill, 315 U.S. 442, 446 (1942); see also Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). A Rule 12(b)(1) motion may be raised at any time, by either party or by the Court *sua sponte*. *See* Fed.R.Civ.P. 12(h).

2. *Standard under Federal Rules of Civil Procedure 12(b)(6) and 9(b)*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint

provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007.)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. See *Active Disposal Inc. v. City of Darien,* 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556* U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Mr. Johnson's conspiracy to defraud claim is governed by the heightened pleading standard imposed by Federal Rule of Civil Procedure 9, which provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity requirement requires the plaintiff to allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *United States v. Lockheed–Martin Corp.,* 328 F.3d 374, 376 (7th Cir. 2003) (citation omitted).

## II.
### BACKGROUND

IME and Indev are companies engaged in the design, manufacture, and repair of gauging and measurement systems. [Filing No. 1 at 5.] Prior to July of 2019, IME and Indev were

3

competitors until IME acquired Indev. [Filing No. 1 at 5.] Plaintiffs are the former employers of Mr. Johnson and Mr. Gregory, who founded Microspect Corporation and Microspect Gauging respectively. [Filing No. 1 at 5; Filing No. 19-2 at 1; Filing No. 19-3 at 1.] Microspect Corporation and Microspect Gauging are direct competitors of Plaintiffs. [Filing No. 1 at 7-9.]

Plaintiffs brought suit against Defendants alleging that Defendants misappropriated and continue to misappropriate "Plaintiffs' trade secrets and other proprietary and confidential business information." [Filing No. 1 at 2.] Specifically, Plaintiffs allege that Mr. Johnson and Mr. Gregory "spent their time as [Plaintiffs'] employees establishing and engaging in businesses directly competing with [Plaintiffs] and using in those efforts Plaintiffs' own trade secrets and confidential information." [Filing No. 1 at 6.] Upon termination of their employment, Plaintiffs allege that Mr. Johnson and Mr. Gregory misappropriated and used Plaintiffs' "product designs, product manuals, pricing guidelines, customer lists, customer ordering and pricing data," and various regulatory agency certifications and authorizations as if they were created and owned by Defendants. [Filing No. 1 at 8.] On certain occasions, Defendants simply removed Plaintiffs' logos from documents and replaced them with their own logos. [Filing No. 1 at 8.] After their termination, Plaintiffs allege that Mr. Johnson and Mr. Gregory refused to return materials to Plaintiffs or returned materials after downloading or deleting information. [Filing No. 38 at 3-6.]

In Defendants' Answer, Mr. Johnson asserts third-party claims against IME's President, John Young, for breach of contract and conspiracy to defraud. [Filing No. 58 at 30.] Mr. Young is not a Plaintiff in this case. [Filing No. 71 at 2.] Mr. Johnson asserts that this Court has subject-matter jurisdiction to hear his claims against Mr. Young pursuant to diversity jurisdiction, 28 U.S.C. §1332(a), because there is complete diversity of citizenship and the amount in controversy

for each of his third-party claims exceeds $75,000, exclusive of interest and costs. [Filing No. 58 at 30-31.]

In support of his breach of contract claim, Mr. Johnson alleges that Mr. Young offered him a new employment contract with Plaintiffs at his existing salary, benefits, and commission levels as an enticement to continue his employment after the completion of IME's acquisition of Indev. [Filing No. 58 at 31.] Mr. Johnson also asserts that a condition of this agreement was Mr. Young's assurance that Mr. Johnson could keep his cell phone number after the termination of his employment. [Filing No. 58 at 31.] Mr. Johnson alleges that Mr. Young agreed to sign a written agreement memorializing the oral contract, which would take effect on July 1, 2019. [Filing No. 58 at 31.] Mr. Johnson asserts that he spent "several thousand dollars" in attorneys' fees to memorialize the employment agreement. [Filing No. 58 at 31.] However, he contends that Mr. Young ignored Mr. Johnson's requests to finalize the agreement until September of 2019, when Mr. Young presented a materially different contract to Mr. Johnson and told him to "sign [the] different employment agreement or leave the company." [Filing No. 58 at 31.] Mr. Johnson asserts that he signed the agreement but did so under duress. [Filing No. 58 at 31.] Upon Mr. Johnson's termination, he was not permitted to keep his cell phone number. [Filing No. 58 at 31.] Mr. Johnson asserts that as a result of Mr. Young's actions, he lost thousands of dollars in commissions and lost opportunities, as well as interest and attorneys' fees. [Filing No. 58 at 32.]

In support of his conspiracy to defraud claim, Mr. Johnson alleges that Mr. Young and an Indev employee named Stephen Hermann "conspired to defraud Indev[1] of its business and enrich themselves to Indev's detriment" by sending "emails directly to Indev customers." [Filing No. 58

---

[1] The conspiracy alleged by Mr. Johnson predated IME's acquisition of Indev.

at 32.] Mr. Johnson claims that "[t]his conspiracy injured [him] as an employee of Indev, severely weakening the company and causing him financial loss." [Filing No. 58 at 32.]

### III.
#### DISCUSSION

Mr. Young has moved to dismiss Mr. Johnson's claims against him pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction over his third-party claims because it is "a legal certainty that [Mr.] Johnson cannot recover $75,000 on his claims" against him. [Filing No. 71 at 3.] Mr. Young argues that Mr. Johnson cannot succeed on his breach of contract claim because Mr. Johnson's "only cognizable claim in Indiana would be against the company with which [Mr.] Johnson claims he had an employment agreement, not against the company's president." [Filing No. 71 at 4.] Mr. Young further argues that "the damages claimed under both [of Mr. Johnson's claims] cannot possibly amount to anywhere near $75,000", [Filing No. 71 at 5], and introduces evidence to support this argument, [Filing No. 70]. Alternatively, Mr. Young argues that Mr. Johnson's breach of contract claim fails pursuant to Rule 12(b)(6) because "the contract he has alleged was an employment contract with IME." [Filing No. 71 at 7.] Moreover, Mr. Young argues that Mr. Johnson's conspiracy to defraud claim fails pursuant to Rules 9(b) and 12(b)(6) because Mr. Johnson failed to plead with specificity and alleged no conduct by Mr. Young. [Filing No. 71 at 8.]

Mr. Johnson responds that the Court has supplemental jurisdiction over his "Cross-Complaint"[2] because the claims in Plaintiffs' original Complaint and his Cross-Complaint "arise

---

[2] The Court takes note that Mr. Johnson has characterized his claims against Mr. Young as both "third-party claims" as well as "cross-claims". [Filing No. 58; Filing No. 79.] These are legally distinct concepts. *Compare* Fed. R. Civ. P. 14 *with* Fed. R. Civ. P. 13. In the future, counsel for Mr. Johnson should ensure that he is properly asserting claims consistent with the Federal Rules of Civil Procedure. The Court observes that is likely that neither rule applies here.

from IME's acquisition of Indev" and his employment with Plaintiffs, and thus his third-party claims "arise from the same nucleus of operative fact." [Filing No. 75 at 4.] Mr. Johnson further argues that his counsel "estimates that $75,000 should represent [his] minimal assessment of the value of [his] case." [Filing No. 75 at 5-6.] Mr. Johnson argues that Mr. Young may be held individually liable through a theory of unjust enrichment where the "Cross-Complaint alleges that [Mr. Young], as president of IME, engaged in activities directed at defrauding Indev and, as a result of those activities, he enriched himself at Indev's and [Mr. Johnson's] detriment" and thus Mr. Young "can be sued individually for the breach of oral contract" with Mr. Johnson. [Filing No. 75 at 7-8.] Additionally, Mr. Johnson asserts that he has "stated a valid claim for conspiracy to defraud Indev and Johnson, and with sufficient particularity to put [Mr. Young] on fair notice of the nature of his claims." [Filing No. 75 at 8.] In the event the Court finds his "Cross Complaint" deficient, Mr. Johnson requests leave to amend. [Filing No. 75 at 8.]

     Mr. Young replies that Mr. Johnson did not assert that this Court has supplemental jurisdiction over his claims against Mr. Young until his Response to Mr. Young's Motion to Dismiss, which was filed after the deadline to amend the pleadings had passed. [Filing No. 79 at 2.] Accordingly, Mr. Young argues that "this Court should find that it is too late for [Mr.] Johnson to change his jurisdictional theory." [Filing No. 79 at 3.] Mr. Young further asserts that Mr. Johnson's allegations "come nowhere close to supporting the notion that damages on his claims can exceed the required $75,000 threshold." [Filing No. 79 at 4.] Additionally, Mr. Young argues that Mr. Johnson has "provided no basis in law or fact to [hold Mr. Young personally liable]" and thus the court should disregard his argument. [Filing No. 79 at 7.] Finally, Mr. Young argues that Mr. Johnson failed to plead the "the who, what, when, where and how" required under Rule 9(b) for a conspiracy to defraud claim as well as any conduct by Mr. Young. [Filing No. 79 at 7.] Mr.

7

Young concludes that Mr. Johnson should not be given leave to amend because he "cannot demonstrate good cause for not invoking supplemental jurisdiction earlier, that [Mr.] Young and the Plaintiffs would not be prejudiced by [Mr.] Johnson's late pleading efforts, or that his amendment would not be futile." [Filing No. 79 at 7.]

Mr. Johnson asserts that the Court has jurisdiction over his claims pursuant to two separate jurisdictional theories.³ When Mr. Johnson initially asserted his claims against Mr. Young, he argued that the Court had diversity jurisdiction, 28 U.S.C. §1332 (a), to hear his claims. [Filing No. 58 at 30.] Mr. Johnson now asserts that his claims fall within the Court's supplemental jurisdiction, 28 U.S.C. § 1367. [Filing No. 75 at 3.] The Court will consider both jurisdictional bases in turn.

   *1. Supplemental Jurisdiction*

Mr. Johnson asserts that the Court has supplemental jurisdiction over his state law claims against Mr. Young. [Filing No. 75 at 3.] Supplemental jurisdiction–or ancillary jurisdiction– exists when a federal court acquires an independent basis for subject-matter jurisdiction over a case, which permits a federal court to entertain certain claims or incidental proceedings that would not, on their own, suffice for federal jurisdiction. *See Peacock v. Thomas, 516 U.S. 349, 355 (1996)* ("Ancillary jurisdiction may extend to claims having a factual and logical dependence on 'the primary lawsuit,' but that primary lawsuit must contain an independent basis for federal

---

³ The Court notes that Mr. Johnson did not plead supplemental jurisdiction until his Response to the presently pending motion, which was filed after the deadline to amend the pleadings under the Case Management Plan. [Filing No. 32 at 4.] Further, Mr. Johnson did not seek leave to amend his pleadings prior to asserting supplemental jurisdiction. [Filing No. 75.] Mr. Johnson is cautioned in the future that "the proponent of subject-matter jurisdiction, as with any party with the burden on a particular point, may forfeit an argument that could have been made to support jurisdiction." *Hunte v. Safeguard Properties Management, LLC,* 2017 WL 5891060, at *6 (N.D.Ill. 2017).

8

jurisdiction." (citation omitted)). The exercise of supplemental jurisdiction is purely discretionary. *Bailey v. City of Chicago,* 779 F.3d 689, 696 (7th Cir. 2015).

Supplemental jurisdiction can only be exercised if the claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To determine if claims arise from the same case or controversy, the Court must consider if the jurisdiction-invoking claim and the supplemental claim share a common nucleus of operative facts. *See, e.g., Houskins v. Sheahan,* 549 F.3d 480, 495 (7th Cir. 2008). The Seventh Circuit has recognized that supplemental jurisdiction is "appropriate when the supplemental claim involves the same parties, contracts, and course of action as the claim conferring federal jurisdiction." *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.,* 891 F.3d 256, 258 (7th Cir. 2018) (collecting cases). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997).

Mr. Johnson's state law claims against Mr. Young do not arise out of the same case or controversy as Plaintiffs' claims of misappropriation of trade secrets and other proprietary and confidential business information. Setting aside questions of standing[4], in order to recover for civil conspiracy, Mr. Johnson must show concerted action, vis-à-vis the commission of a tort, among two or more persons to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means which resulted in damages to him. *Birge v. Town of Linden,* 57 N.E.3d

---

[4] Mr. Young also argues that "it is hard to fathom how [Mr.] Johnson, as an employee of Indev, could have suffered financial loss from an injury to Indev." [Filing No. 71 at 6.] Because the Court has determined that it lacks jurisdiction over Mr. Johnson's claims, it need not determine if Mr. Johnson has standing to assert a civil conspiracy claim against Mr. Young.

9

839, 846 (Ind. Ct. App. 2016). This claim, as asserted by Mr. Johnson, involves entirely different sets of parties (Mr. Young and the non-party Stephen Hermann) than any of the parties to the Plaintiffs' original Complaint, with the exception of Mr. Johnson. Additionally, Mr. Johnson has not demonstrated that there is a factual connection between the allegations in Plaintiffs' Complaint and the facts that he alleges, which occurred over two years prior to the facts at issue in Plaintiffs' Complaint. [Filing No. 1 at 6; Filing No. 58 at 30.] Accordingly, Mr. Johnson's conspiracy claim does not arise out of the same case or controversy as Plaintiffs' claims and the Court declines to exercise supplemental jurisdiction over that claim.

Turning to Mr. Johnson's breach of contract claim, under Indiana law, Mr. Johnson would need to establish the existence of a contract, the breach thereof, and damages. *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind. Ct. App. 1998). Because Mr. Johnson's contract was with IME, Mr. Johnson would need to pierce the corporate veil to hold Mr. Young personally liable for breach of contract by showing that "the corporation is merely the instrumentality of [Mr. Young] and that misuse of the corporate form constitutes a fraud or promotes injustice." *Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd. P'ship*, 768 N.E.2d 463, 468 (Ind. Ct. App. 2002). The narrow operative facts underlying Plaintiffs' misappropriation of trade secret claims do not relate to Mr. Johnson's state law breach of contract claim. Courts within this Circuit have declined to exercise supplemental jurisdiction based on the mere fact that both claims arise from an employment relationship. *See Farr v. Continental White Cap, Inc.*, 1992 WL 57198, at *1 (N.D. Ill. 1992) (finding no common nucleus of fact between claim for constructive discharge and breach of contract claim alleging that plaintiff was entitled to a bonus under a corporate incentive plan because the "mere fact that both claims arose from [plaintiff's] employment . . . is insufficient to warrant exercise of this court's pendent jurisdiction"); *Eager v. Commonwealth Edison Co.,* 187

F.Supp.2d 1033, 1040 (N.D. Ill. 2002) (no supplemental jurisdiction where Title VII sexual discrimination claim did not "involve the same set of facts that animated the state claim" and was so unrelated that the federal claim "would be unaffected if the [state] claims were dismissed"). Similarly, Mr. Johnson's breach of contract claim does not arise out of the same case or controversy as Plaintiffs' claims and the Court cannot exercise supplemental jurisdiction over that claim.

2. *Diversity Jurisdiction*

Because the Court has determined supplemental jurisdiction is not present, it will now analyze if Mr. Johnson's claims fall within the Court's diversity jurisdiction. Diversity jurisdiction exists in civil actions where there is complete diversity of citizenship and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. The party invoking diversity jurisdiction bears the burden of showing its existence. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

The parties do not dispute that their citizenships are completely diverse. [Filing No. 58; Filing No. 71; Filing No. 75.] An individual's citizenship for purposes of diversity jurisdiction "is the place one intends to remain." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). In this case, Mr. Johnson is a citizen of Colorado, residing in Grand Junction, Colorado. [Filing No. 58 at 30.] Mr. Young is a citizen of Indiana, residing in Terra Haute, Indiana. [Filing No. 58 at 30.] Accordingly, this element of diversity jurisdiction has been satisfied. 28 U.S.C. § 1332.

However, the parties dispute whether Mr. Johnson's claims exceed the threshold amount in controversy required by 28 U.S.C. § 1332. As noted earlier, the proponent of jurisdiction carries the initial burden of showing that the amount in controversy requirement is met. *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 511 (7th Cir.2006). "[A] good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Id.* When a single plaintiff

11

has brought multiple claims against a single defendant, the value of those claims may be aggregated. *Snyder v. Harris,* 394 U.S. 332, 335 (1969). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed the amount in controversy threshold of a jurisdictional statute, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Ware v. Best Buy Stores, L.P.,* 6 F.4th 726, 732 (7th Cir. 2021); *Oshana*, 472 F.3d at 511. Uncertainty about whether the claimant can prove its substantive claim and whether damages (if the claimant prevails on the merits) will exceed the threshold does not justify dismissal. *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir. 2006). Therefore, subject-matter jurisdiction exists unless it is clear beyond a legal certainty that the claimant would not be entitled to recover an amount sufficient to satisfy the jurisdictional amount. *Id.*

In the present case, Mr. Johnson has argued that the amount in controversy for each of his claims exceeds $75,000. [Filing No. 58 at 32.] More specifically, Mr. Johnson argues that the value of his breach of contract claim is "thousands of dollars in commissions in 2019 and 2020 … as well as interest and attorneys' fees, as well as lost opportunities." [Filing No. 58 at 32.] With respect to his conspiracy claim, Mr. Johnson argues that the "conspiracy injured [him] as an employee of Indev, severely weakening the company and causing him financial loss." [Filing No. 58 at 32.] Significantly, Mr. Johnson has provided no evidence or "competent proof" to support his argument that his claims exceed the amount in controversy requirement beyond the vague and conclusory statements contained in his Third-Party Complaint and his Response to the presently pending motion. [Filing No. 58 at 32; Filing No. 79.]

With respect to the breach of contract claim, Mr. Young argues that Mr. Johnson "did not lose any opportunities to receive sales commissions due to the alleged changes in his employment

terms . . . nor did [he] lose any business or sales opportunities with respect to the Indev phone number." [Filing No. 71 at 5.] And unlike Mr. Johnson, Mr. Young has provided competent proof: a copy of Mr. Johnson's employment agreement, [Filing No. 1-1], as well as an uncontroverted affidavit stating: "[a]t most, the territorial sales structure could reduce commissions by a maximum of $20,000." [Filing No. 70 at 2.] Mr. Young further attests, "Mr. Johnson did not close any sales from outside his sale territory to [IME and Indev] for which he was denied credit for a sales commission on a completed sale." [Filing No. 70 at 2.] Additionally, Mr. Young attests that "[s]ince taking control of the phone number [Mr.] Johnson references in his Complaint, IME has never received a business call from anyone looking for Microspect on that phone number, and thus has taken no business opportunities from [Mr.] Johnson as a result of having that phone number." [Filing No. 70 at 2.]

With respect to the civil conspiracy claim, Mr. Young argues that "it is hard to fathom how [Mr.] Johnson, as an employee of Indev, could have suffered financial loss from an injury to Indev." [Filing No. 71 at 6.] In support, Mr. Young's affidavit further attests that: "[w]hile working as an independent contractor [Mr.] Hermann attempted to refer some sales leads to IME for customers for which Indev could not meet their gauging equipment requirements . . . neither Indev, nor [Mr.] Johnson, lost any sales to IME from any interaction [that Mr. Young] had with [Mr.] Herrmann." [Filing No. 70 at 3.]

Mr. Johnson does not rebut this evidence beyond stating that Mr. Young "did not account for the fact that [he] was also forced to incur significant attorneys' fees in both drafting the original employment agreement as well as defending this lawsuit and crossclaiming." [Filing No. 75 at 6.] It is well settled that legal expenses yet to be incurred on the date a suit begins are not part of the "amount in controversy" when the suit is filed. *Gardynski-Leschuck v. Ford Motor Co.,* 142 F.3d

955, 959 (7th Cir. 1998) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998.)) Mr. Johnson describes his pre-suit attorneys' fees as "several thousand dollars having an employment agreement written." [Filing No. 58 at 31.]

Mr. Johnson points to the Seventh Circuit Court of Appeals' decision in, *Rising-Moore v. Red Roof Inns, Inc.,* 435 F.3d 813 (7th Cir. 2006), to argue that the Court should rely on his counsel's estimates of the "minimal assessment of the value of [his] case." [Filing No. 75 at 6.] Mr. Johnson's reliance on *Rising-Moore* is misplaced. In *Rising-Moore*, the Seventh Circuit held that the district court was entitled to consider pre-suit settlement offers made by the party seeking to defeat federal jurisdiction as evidence of how the parties value the dispute. *Id.* at 816. The Court is not required, under *Rising-Moore*, to essentially take Mr. Johnson's word at face value in spite of evidence to the contrary. This is particularly true when district courts are empowered to make findings of fact regarding subject-matter jurisdiction. *See Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.,* 60 F.3d 350, 362 (7th Cir. 1995) (citing *Joyce v. Joyce*, 975 F.2d 379, 382 (7th Cir.1992.))

The Court finds that Mr. Johnson has not plausibly supported his argument that the value of his claims exceed the amount in controversy by a preponderance of the evidence. Based on the evidence provided by the parties, the value of Mr. Johnson's breach of contract claim is at most $20,000 in damages as well as "several thousand dollars" in pre-suit attorneys' fees. [Filing No. 58; Filing No. 70; Filing No. 71; Filing No. 75.] Mr. Johnson has not provided any plausible explanation of the value of his conspiracy to defraud claim beyond the conclusory statement that he incurred "financial loss". [Filing No. 58 at 32.] Even when aggregated, the value of these claims do not exceed the jurisdictional threshold required under 28 U.S.C. §1332 and therefore, the claims do not belong in federal court.

Accordingly, the Court dismisses Mr. Johnson's third-party claims against Mr. Young for lack of jurisdiction.

### 3. *Leave to Amend*

As a fallback, Mr. Johnson has requested leave to amend his Third-Party Complaint in the event that the Court determines that it lacks jurisdiction, "given that not on [sic] the factors preventing leave are present in this case." [Filing No. 75 at 8.]

If a pleading is one to which requires a responsive pleading—e.g., a third-party complaint or a cross-claim—then a party may amend once as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15. Mr. Johnson did not amend his Third Party Complaint within 21 days of Mr. Young's Motion to Dismiss and the time period for amendment as a matter of right has passed. [Filing No. 58; Filing No. 69.] The 2009 notes to Rule 15 emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided and will expedite determination of issues that otherwise might be raised seriatim." *Fed. R. Civ. P. 15 Advisory Committee Note*. Mr. Johnson chose not to amend his Complaint in response to Mr. Young's Motion to Dismiss, opting instead to brief the motion and adjudicate the issues. The Court is not required to give Mr. Johnson another chance to plead his claims because he has already had an opportunity to cure deficiencies in their pleadings. *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). Further, Mr. Johnson has not given any indication that he could, in fact, successfully amend his Third-Party Complaint to cure the jurisdictional defects identified above, even if given the

opportunity to do so. Accordingly, the Court, in its discretion, denies Mr. Johnson's request for leave to amend.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **DISMISSES** Mr. Johnson's First Amended Third-Party Complaint, [58.], **FOR LACK OF JURISDICTION**.

Date: 10/21/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**